UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | 3:05-CR-126 |
| v. | ) | (JARVIS/SHIRLEY) |
| | ) | |
| KERRY WATSON, | ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b) and the Rules of this Court for a report and recommendation of the motion to suppress filed by the defendant, Kerry Watson. [Doc. 12]. The government has responded and opposes the defendant's motion. [Doc. 17].

A hearing on the defendant's motion to suppress was held on January 6, 2006. Assistant Federal Defender Kim Tollison and attorney Barbara Clark were present representing the defendant and Tracee Plowell, Assistant United States Attorney, represented the government. The defendant was also present.

The defendant has moved to suppress [Doc. 12] any and all evidence seized as a result of a search of a residence located at 828 W. Emerald Avenue, Knoxville, Tennessee, the search of occupants of that residence, and all statements made by the defendant after being taken into custody after this search, alleging that:

(1) the information relied upon to obtain the warrant was stale, and

(2) the warrant fails to provide for a search of the residence located at 828 W. Emerald Avenue, Knoxville, Tennessee.

At the beginning of the suppression hearing, defendant withdrew his argument regarding the staleness of the information, thereby leaving as his only argument that the search warrant does not provide for a search of the residence located at 828 W. Emerald Avenue, Knoxville, Tennessee.

## I.  FACTS

Testimony for the government was limited to that of Knoxville Police Officer Jeff Holmes.  He testified that he has been an officer with the Knoxville Police Department for six (6) years and is assigned to the Community Response Team of the West District Patrol Division. He stated that he does long-term investigations, obtains search warrants, and has had training in the preparation of search warrants.  Officer Holmes further testified that he prepared and personally applied for the search warrant at issue on March 31, 2005 in front of judicial commissioner Keith Pope in reliance on controlled purchases by a confidential informant and testified that he sought permission to search the residence at 828 W. Emerald Avenue and to search individuals at that address.  He stated that the search warrant describes the residence, its appearance, and directions to get there and that he attached pictures, a map, and a tax assessment

for the residence. [See Government Collective Exhibit 1]. Officer Holmes further testified that after receiving the search warrant, he believed that he was authorized to search the residence at 828 W. Emerald Avenue and the individuals at that address and testified that judicial commissioner Pope told him that he had permission to search the premises. He testified that before conducting the search, he read through the search warrant and affidavit and stated he believed he was authorized to search the residence at 828 W. Emerald Avenue and the people located there. He further stated that he and the entry team conducted the search and that he left the affidavit and copy of the search warrant at the premises.

On cross-examination, Officer Holmes testified that approximately one week before on March 24, 2005, he had attempted to obtain a search warrant and that he had typed the search warrant on a computer. He stated that he pulled up that old search warrant on the computer and made a couple of changes in the application. No changes were made in the search warrant. He also testified that the gun and drugs that were seized were not found on the defendant and testified that he left a copy of the search warrant and affidavit at the 828 W. Emerald Avenue residence. I find the officer's testimony credible and adopt the above as the Court's findings of facts.

## II. ARGUMENTS

Defendant argues that the issue before the court is strictly a legal one based on the four corners of the search warrant. [Doc. 12]. The defendant acknowledges that from a reading of the search warrant and supporting documents, officers attempted to obtain a search warrant for

3

the residence at 828 W. Emerald Avenue. However, he contends that the search warrant issued by Knox County Judicial Commissioner Keith Pope on March 31, 2005 did not authorize the search of the residence at 828 W. Emerald Avenue, but rather, only authorized the search of the four individuals listed in the warrant: Jackie Ray McCall; Genetta Gilbert; Kerry Watson, the defendant; and Kenny Marsh. [See Government Collective Exhibit 1, Search Warrant].

The defendant argues that the gun and the drugs seized in the search were not located on any of the four individuals, but were found in the residence. He maintains that the search was illegal and was a violation of his Fourth Amendment right under the United States Constitution because the search exceeded the permission granted in the search warrant. He also insists that his statement, "[t]he gun and the drugs are mines [sic]," after the illegal search should be suppressed as fruit of the poisonous tree. [See Defendant's Exhibit 2].[1]

The government responded to the defendant's motion, arguing that the search warrant and affidavit were sufficient, that the evidence was lawfully obtained, and that the motion to suppress any and all evidence, as well as statements by the defendant following the search, should be denied. [Doc. 17]. While the government concedes that a plain reading of the warrant reveals that the residence was omitted in the grant of authority section of the warrant, it maintains that a commonsense reading of the warrant indicates that the intention of the warrant was to grant authority to search not only the persons described in both the body of the search warrant affidavit and the search warrant itself but also the place described in the search warrant affidavit, which was incorporated by reference, and described in the body of the search warrant.

---

[1] The statement in issue was not the subject of Officer Holmes' testimony, but rather argument by counsel and was made an exhibit during argument without objection.

4

Furthermore, the government insists that search warrants are directed not at persons, but at property where there is probable cause to believe that instrumentalities or evidence of crime will be found, citing Zurcher v. Stanford Daily, 436 U.S. 547 (1978). The government maintains that a clear reading of both the search warrant and the affidavit indicates that the warrant was issued for the residence, noting that had the search warrant been only for persons, it would not have provided such particularized and detailed description of the Emerald Avenue residence. Moreover, as noted in paragraph 2 on page 3 of the search warrant, when discussing the inventory process of items seized pursuant to the warrant, the warrant directs the officer to leave a copy of the warrant with the person the items are recovered from or in the event the items are not taken from a person, to leave a copy with the person in charge of the premises. [See Government Exhibit 1, Search Warrant]. The government contends that this demonstrates that the omission of the word "residence" was a typographical error rather than an affirmative denial of a warrant for the premises, especially in light of the fact that the judicial commissioner determined that there was probable cause to believe that evidence of criminal activity could be found inside the residence.

   The government argues that the totality of the circumstances, such as the photographs; the search warrant which describes the residence on the first page; and the detailed affidavit, which was incorporated by reference into the search warrant, supports a finding that the search warrant was for the 828 W. Emerald Avenue residence. Thus, the government insists that the typographical error was ministerial and should not invalidate the warrant.

Furthermore, the government argues that if the search warrant is determined to be faulty, then the good-faith exception applies, arguing that Officer Holmes relied on the warrant and Judicial Commissioner Pope's statements to him in good faith and properly entered and searched the residence.

The government explains that for the good-faith exception to apply, an officer must have had a "reasonable, objective and good faith belief that the search warrant was valid," and that a totality of the circumstances approach should be employed when assessing "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." United States v. Leon, 468 U.S. 897, 923 n.23 (1984).

Lastly, the government maintains that because the search was lawful, defendant's statement to officers should not be suppressed as fruit of the poisonous tree. The defendant argues that Leon only applies if the search warrant is later deemed invalid, but argues that this search warrant was valid, but only as to people, not as to a search of the residence.

### III. ANALYSIS

The issue before the Court is whether the search warrant describes the place to be searched–828 W. Emerald Avenue, Knoxville, Tennessee–with sufficient particularity and whether the good-faith exception of United States v. Leon, 468 U.S. 897 (1984) applies to the search.[2]

---

[2] Although not the subject of the motion to suppress per se, I find that the affidavit in issue did establish probable cause to search the residence at 828 W. Emerald Avenue, Knoxville, Tennessee. For the sake of completeness, I also find there was a sufficient nexus established between 828 W. Emerald Avenue and the criminal activity in issue and the evidence sought, thus

6

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend. IV. It requires both a finding of probable cause, and that the search warrant particularly describe "the place to be searched and the persons or things to be seized." The second requirement is generally referred to as the "particularity requirement."

The Sixth Circuit has stated that the test for determining whether the description on the warrant is sufficient to satisfy the "particularity requirement" of the Fourth Amendment is "(1) whether the place to be searched is described with sufficient particularity as to enable the executing officers to locate and identify the premises with reasonable effort; and (2) whether there is reasonable probability that some other premises may be mistakenly searched." Knott v. Sullivan, 418 F.3d 561, 568 (6th Cir. 2005) (quoting United States v. Gahagan, 865 F.2d 1490, 1497 (6th Cir. 1989))." If a warrant fails to describe with sufficient particularity a place to be searched, a supporting affidavit incorporated into the warrant can cure the insufficiency if the affidavit describes the place with sufficient particularity. United States v. Gahagan, 865 F.2d 1490, 1496 (6th Cir.), cert. denied, 492 U.S. 918 (1989); see also United States v. Durk, 149 F.3d 464, 466 (6th 1998); United States v. Brown, 49 F.3d 1162, 1168 (6th Cir.), cert. denied, 516 U. S. 942 (1995). This is particularly true where, as here, one of the executing officers (i.e., Officer Holmes) was the affiant in the affidavit and had personal knowledge of the proper location, could correctly identify it and the search was limited to such residence. See Gahagan, 865 F.2d at 1499.

---

further constituting probable cause to issue a search warrant for 828 W. Emerald Avenue.

7

In the present case, the search warrant refers to "the attached affidavit which is hereby expressly incorporated by reference and made a part hereof." [See Government Collective Exhibit 1, Search Warrant]. The first page of the affidavit contains a lengthy paragraph describing the residence at 828 W. Emerald Avenue. [See Government Collective Exhibit 1, Affidavit].

The affidavit also specifically references a "certain residence located in Knox County, TN" and after the description of the house at 828 W. Emerald Ave. notes "This is a complete description of the <u>premises desired to be searched</u> . . ." (emphasis added) and adds "Being the <u>premises</u> occupied or under the control of " (and then lists the four named individuals) (emphasis added). The affidavit also goes on to state "There is reason to believe that there is now being kept <u>on the above described premises</u>" (emphasis added). The affidavit also references the presence of the confidential and reliable informant "inside the residence" where he saw crack cocaine offered for sale and that the occupants were still in possession of the crack cocaine when he "left the residence. . ." (Affidavit, ¶ 2, at 4); at least four controlled and directed drug purchases "at the residence, 828 W. Emerald Ave., described above" (Affidavit, ¶ 4, at 5) and concludes by stating the "Affiant has probable cause to believe, that the <u>aforementioned location to be searched</u> . . ." and "prays the issuance of a search warrant in due form of law <u>for the search of the above described premises</u> for the same property . . ." (Affidavit, at 5) (all emphasis added).

Moreover, the search warrant refers to "the facts set forth in said affidavit," <u>id,</u>

8

Case 3:05-cr-00126   Document 20   Filed 02/03/06   Page 8 of 12   PageID #: 22

In the present case, the search warrant refers to "the attached affidavit which is hereby expressly incorporated by reference and made a part hereof." [See Government Collective Exhibit 1, Search Warrant]. The first page of the affidavit contains a lengthy paragraph describing the residence at 828 W. Emerald Avenue. [See Government Collective Exhibit 1, Affidavit].

The affidavit also specifically references a "certain residence located in Knox County, TN" and after the description of the house at 828 W. Emerald Ave. notes "This is a complete description of the <u>premises desired to be searched</u> . . ." (emphasis added) and adds "Being the <u>premises</u> occupied or under the control of " (and then lists the four named individuals) (emphasis added). The affidavit also goes on to state "There is reason to believe that there is now being kept <u>on the above described premises</u>" (emphasis added). The affidavit also references the presence of the confidential and reliable informant "inside the residence" where he saw crack cocaine offered for sale and that the occupants were still in possession of the crack cocaine when he "left the residence. . ." (Affidavit, ¶ 2, at 4); at least four controlled and directed drug purchases "at the residence, 828 W. Emerald Ave., described above" (Affidavit, ¶ 4, at 5) and concludes by stating the "Affiant has probable cause to believe, that the <u>aforementioned location to be searched</u> . . ." and "prays the issuance of a search warrant in due form of law <u>for the search of the above described premises</u> for the same property . . ." (Affidavit, at 5) (all emphasis added).

Moreover, the search warrant refers to "the facts set forth in said affidavit," <u>id,</u>

and specifically notes the affidavit is "hereby expressly incorporated by reference and made a part hereof; and states on page one, that there is probable cause established that the "laws of the State of Tenn. have been or are being violated <u>on or in a (premises) known and described as follows to wit: 828 W. Emerald Ave.</u> (followed by its detailed description) (emphasis added)" and goes on after the specific description to state "This is a complete description<u> of the premises desired to be searched </u>. . ." (emphasis added) (Search Warrant, at 2). The search warrant also states that there is "reason to believe that there is now being kept <u>on the above described premises </u>certain property namely quantities of cocaine . . . (and the list of property claimed to be evidence, or proceeds of drug trafficking and/or contraband) (emphasis added) (Search Warrant, at 2). The third page of the search warrant states that "[h]ere in before specified, for the property specified, and if the same, or any part thereof shall be found in said premises then you are authorized and commanded to seize the same and to bring the property and any person arrested in connection therewith before magistrate." [<u>See</u> Government Collective Exhibit 1, Search Warrant, at 3]. Additionally, as attachments to the search warrant and the affidavit, Officer Holmes included a property map, a Knox County property tax assessment, a city control station map, and two photographs of the residence at 828 W. Emerald Avenue. In light of the foregoing, the Court is satisfied that the clear intent of the application, affidavit, and search warrant was to authorize a search of 828 W. Emerald Ave. The Court is further satisfied that the supporting affidavit of Officer Holmes, in addition to the accompanying attachments, describes the residence at 828 W. Emerald Avenue with sufficient particularity, and therefore, cures the

9

search warrant's insufficiency. United States v. Tran, — F.3d —, 2006 WL 20545 (6th Cir. Jan. 5, 2006); Gahagan, 865 F.2d at 1496.

Furthermore, even if the search warrant did not cover the residence at 828 W. Emerald Avenue, the Court finds that the search was valid under the Leon good-faith exception of whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. Leon, 468 U.S. at 923 n.23.

Officer Holmes testified that he typed the search warrant and affidavit at issue himself and presented them, along with photographs of the residence, a map to the residence, the tax assessment for the residence, to the judicial commissioner and testified at the suppression hearing that the commissioner who signed the search warrant told him that he had the authority to search the residence as well as the four individuals named in the warrant.

Based on the foregoing, the Court finds that Officer Holmes and fellow officers with him acted in objective reasonable reliance and good faith when he and they relied on the search warrant signed by the judicial commissioner and acted with objective reasonable reliance and in good faith believed that the search warrant in issue authorized them to search the residence at 828 W. Emerald Avenue in which the drugs and the gun were seized. The Court further finds not only that the actions of Officer Holmes and the other officers were objectively reasonable but that a reasonable well-trained officer, in viewing the search warrant and incorporated affidavit in its entirety would have reasonably relied on this search warrant as authorizing a search of 828 W. Emerald Ave. and would not have known the search was improper, due to a typographical error in the body of the warrant and despite the repeated

10

references to and specific description of the property and the commissioner's verbal authorization. The language contained in the affidavit and the search warrant itself clearly indicates an intent to search a specifically described residence, there is no issue as to probable cause, and the language in the search warrant itself repeatedly references the specific property in detail and refers to it as the "premises desired to be searched."

Because the search of the residence was lawful, defendant's statement that "[t]he gun and the drugs are mines [sic]" need not be suppressed as fruit of the poisonous tree. [Defendant's Exhibit 2]. Nor should the exclusionary rule bar such evidence when obtained by officers acting in objective reasonableness on the search warrant issued (See Leon, 468 U.S. at 918-21). This Court believes that the exclusionary rule seeks to deter (and remedy) substantive violations of the Fourth Amendment, and not to punish reasonable officers and/or the government for mere ministerial or typographical errors or technical defects.

## IV.  CONCLUSION

Therefore, it is **RECOMMENDED**[3] that the defendant's motion to suppress any and all evidence seized and to suppress his statement following the search [Doc. 12] be **DENIED.**

                              Respectfully submitted,

                                s/C. Clifford Shirley, Jr.
                              United States Magistrate Judge

---

[3] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see also Thomas v. Arn, 474 U.S. 140 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).